UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-80172-Civ-HURLEY
       (06-80184-Cr-HURLEY)
MAGISTRATE JUDGE P. A. WHITE

DWAYNE EASON,                    :

        Movant,                  :

v.                               :        **REPORT OF MAGISTRATE**
                                          **JUDGE RECOMMENDING**
UNITED STATES OF AMERICA,        :        **THAT MOTION BE GRANTED**
                                          **FOLLOWING AN EVIDENTIARY HEARING**
        Respondent.              :
_____

Introduction

        This matter is before the Court on the movant, Dwayne Eason's ("Eason") motion to vacate, attacking his conviction and sentence for felon in possession of a firearm and ammunition entered following a guilty plea in case no. 06-80184-Cr-Hurley.

        This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2255 Cases in the United States District Courts.

        This Court has reviewed the motion (Cv-DE#1) with supporting memorandum (Cv-DE#2), and supplement thereto (Cv-DE#16), the government's response (Cv-DE#9) and supplement thereto (Cv-DE#17), the PSI, and the underlying criminal file.

        The movant raises the following claims:

        1.    He was denied effective assistance of
              counsel, where his lawyer failed to file

a requested direct appeal. (Cv-DE#2:7).

2.   He is entitled to vacatur of his sentence
     because he is actually innocent of his
     enhanced sentence in light of the Supreme
     Court's decision in <u>Begay v. United
     States</u>, ___ U.S. ___, 128 S.Ct. 1581
     (2008).

After review of the record, it became apparent that an
evidentiary hearing was necessary at least with regard to claim
one, as listed above. Marc Seitles, Esquire was appointed to
represent Eason, and an evidentiary hearing held on October 8,
2009.

<u>Factual and Procedural History</u>

For an appreciation of this case and the claims raised herein,
a detailed factual and procedural history of the underlying
criminal case is required. The conviction stems from information
received by the Boynton Beach Police Department on July 25, 2006
from a confidential source ("CS") that narcotics and firearms could
be purchased from an individual "D" located at 656 S.W. 2nd Avenue,
Boynton Beach, Florida. A controlled purchase of marijuana was made
by the CS at the target residence. Surveillance was commenced,
during which the individual was observed making similar
transactions. Eventually, a search warrant was obtained and
executed at the residence on August 11, 2006, but the movant was
not present at that time. A K-9 dog alerted to a vehicle parked in
the driveway of the residence, and a subsequent search of the
vehicle yielded 22 rounds of ammunition, spent casing, a digital
scale with marijuana residue, and a bullet proof vest. Inside the
residence was the movant's driver's license, $3,400 in cash,
several cellular phones.

2

Thereafter, on October 3, 2006, officers made contact with the movant during a traffic stop based on an expired tag. At that time, the movant gave the officers consent to search the vehicle, which revealed a loaded .38 caliber semiautomatic pistol with an obliterated serial number, as well as, 143.6 grams of marijuana. After being advised of and waiving his constitutional rights, the movant provided a statement to police admitting that everything in the car belonged to him, and not the two other occupants. He was initially charged by the state for violation of Florida law, but the case was later nolle prossed.

On January 11, 2007, Eason was charged by Indictment with felon in possession of ammunition, in violation of 18 U.S.C. §922(g)(1) (Count 1) and felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §922(g)(1) (Count 2). (Cr-DE#3). On March 15, 2007, he entered into a written plea agreement wherein he agreed to plead guilty to Count 2. (Cr-DE#23). The movant understood that the court would impose sentence after considering the advisory guidelines, based in part on a PSI, which would be prepared after the plea was entered. (Id.:11-2). The movant acknowledged that the court was not bound to impose a guideline sentence, and was permitted to tailor the sentence in light of other statutory concerns, which may be more or less severe than the guidelines. (Id). The movant likewise acknowledged that he could not withdraw his plea solely as a result of the sentence imposed. (Id.:2-4). The movant also understood that the court could impose a maximum term of up to 10 years in prison. (Id.).

The movant further agreed to waive his right to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeded the maximum permitted by statute or was the result of an upward departure from the guideline range the court established at sentencing. (Id.:4-5).

3

In exchange, the government agreed to dismiss all remaining charges after sentencing. (Id.:1). The government also agreed to recommend up to a 3 level reduction in the movant's base offense level based on his timely acceptance of responsibility. (Id.:3).

On April 20, 2007, prior to sentencing, a PSI was prepared and made available to the parties which revealed as follows. (PSI:2). The Addendum prepared by the probation officer reflects that it sustained many of the movant's objections (Cr-DE#25) regarding qualifying prior felony convictions and the amount of the enhancements as contained in the specific offense characteristics. Therefore, the PSI set the base offense level at 20, pursuant to U.S.S.G. §2K2.1(a)(4) of the 2005 Guidelines Manual, because the offense involved possession of a firearm and/or ammunition by a convicted felon. (PSI ¶16). Two levels were added because the firearm had an obliterated serial number. (PSI ¶17). An additional four levels were added because the movant possessed a firearm or ammunition in connection with another felony, resulting in an adjusted offense level 26. (PSI ¶¶18,22). Three levels were then removed based on the movant's timely acceptance of responsibility. (PSI ¶¶24-25). This resulted in a total adjusted offense level 23. (PSI ¶26).

The probation officer initially determined in the PSI and first addendum thereto that the movant had a total of 9 criminal history points, resulting in a criminal history category IV. The resulting guideline range was 70 to 87 months in prison. (PSI ¶66). However, in a Second Addendum to the PSI, the probation officer found that the PSI was short two criminal history points, and therefore adjusted the total criminal history points to 11, resulting in a criminal history category V, and a guideline range of 84 to 105 months in prison.

In response, movant's counsel filed a motion for downward

departure, arguing that the movant's criminal history over-represented the seriousness of the offense, and therefore, requested that the court depart to a criminal history category IV, resulting in an advisory guideline range of 70 to 87 months in prison. (Cr-DE#38).

On June 15, 2007, the movant appeared for sentencing. (Cr-DE#51:-Sentencing Transcript). At that time, defense counsel explained that she had first objected to the PSI because it had used the wrong guideline manual which resulted in the movant receiving a four-level enhancement, rather than a two-level enhancement based on the firearm having an obliterated serial number. (Id.:19). Counsel also explained that the second objection related to a prior conviction for possession of marijuana. (Id.). Defense counsel concluded that based on the objections, the PSI was amended to reflect a guideline range of 70 to 87 months in prison. (Id.). When asked by the court specifically if she had concerns regarding the guideline calculations, as represented in the movant's motion for downward departure, defense counsel indicated that in an addendum, after rescoring a prior offense, the probation officer raised the guideline range to 84 to 105 months in prison. (Id.:20-21,23,25).

In denying the movant's request for a downward departure based on over-representation of the criminal history, the court noted the movant began having trouble with the criminal justice system at a very young age, "moving up from stealing cars to marijuana issues and they're charging him with possession of marijuana." (Id.:34). In so ruling, the court noted that there was "simply a fairly well-established and repetitive pattern of engaging in criminal activity." (Id.).

After considering the advisory guideline range, as well as, the statutory factors pursuant to 18 U.S.C. §3553(c), the court

determined that a sentence below the advisory guideline range would be a reasonable sentence, sufficient but not more than necessary to achieve the goals of Congress, and therefore, sentenced the movant to a term of 72 months in prison. (<u>Id</u>.:47). In so ruling, the court noted that the movant was smart, had potential, but made some disasterous life choices. (<u>Id</u>.:45).

The judgment was entered by the Clerk on June 18, 2007. (Cr-DE#42). The judgment of conviction in the underlying criminal case became final at the latest on July 2, 2007, ten days after the entry of judgment, when time expired for filing a notice of appeal.[1]  At the latest, the movant was required to file this motion to vacate within one year from the time the judgment became final, or no later than July 2, 2008. <u>See</u> <u>Griffith v. Kentucky</u>, 479 U.S. 314, 321, n.6 (1986).

However, on July 29, 2008, the movant filed a *pro se* motion based on his actual innocence, challenging the validity of his conviction and sentence in light of the then recent Supreme Court decision in <u>Begay v. United States</u>, ___ U.S. ____, 128 S.Ct. 1581 (2008) and the Eleventh Circuit's decision in <u>United States v. Archer</u>, 531 F.3d 1347 (11th Cir. 2008). The district court summarily denied the motion, finding there was no indication from the Supreme Court that <u>Begay</u> was retroactive. (Cr-DE#44). The movant appealed, and on April 21, 2009, the Eleventh Circuit liberally construed the movant's criminal motion as one made pursuant to §3582(c) and

---

[1]Where, as here, a defendant does not pursue a direct appeal, the conviction becomes final when the time for filing a direct appeal expires. <u>Adams v. United States</u>, 173 F.3d 1339, 1342 n.2 (11th Cir. 1999). The time for filing a direct appeal expires ten days after the judgment or order being appealed is entered. <u>Fed.R.App.P.</u> 4(b)(1)(A)(I). The judgment is "entered" when it is entered on the docket by the Clerk of Court. <u>Fed.R.App.P.</u> 4(b)(6). On December 1, 2002, <u>Fed.R.App.P.</u> 26 which contains the rules on computing and extending time, was amended so that intermediate weekends and holidays are excluded from the time computation for all pleadings due in less than 11 days.

<u>Fed.R.Cr.P.</u> 35. <u>United States v. Eason</u>, 2009 WL 1059628 (11th Cir. 2009). The Eleventh Circuit found that neither statute permitted the relief requested, and noted in passing, however, that the movant currently had pending a §2255 motion. <u>Id</u>. at *2.

While that appeal was pending, the movant returned to the district court on February 6, 2009, filing this motion to vacate less than one year from the Supreme Court's decision in <u>Begay</u>, when he signed and turned it over to prison officials for mailing.[2] (Cv-DE#1).

<u>Timeliness of §2255 Motion</u>

Pursuant to 28 U.S.C. §2255, as amended April 24, 1996, a one year period of limitations applies to a motion under the section. The one year period runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant is prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

---

[2] <u>See</u>: <u>Adams v. U.S.</u>, 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

7

The movant does not dispute that his motion was filed over one year from the time his conviction became final, but within one year from the Supreme Court's decision in Begay. At the time the government filed its response in this case, it acknowledged that the movant was asserting that his constitutional rights were violated because counsel failed to file a requested direct appeal. The government acknowledged that the movant was challenging the lawfulness of his sentence on the basis that he was improperly sentenced under the guidelines because one of the prior convictions for carrying a firearm which was used to determine his criminal history category and/or the base offense was no longer considered a violent felony. The movant argued and the government agreed that this motion filed within one year of the Begay decision, was timely pursuant to §2255(f)(3), as listed above.

The law is clear that the statute of limitations begins to run for purposes of filing a motion under §2255(f)(3) when the Supreme Court creates a new right, which in this case is, at the earliest, April 16, 2008, the date Begay was decided.[3] Begay altered the manner in which a "violent felony" was to be determined. Thus, the government conceded that the motion was timely filed within one-year of the Begay decision. For a first §2255 motion, filed within one year of a Supreme Court decision, any court, including a district court in which the motion is filed, can make a new rule

---

[3] The judgment of the Eleventh Circuit was entered on November 6, 2002. The conviction became final at the latest on February 6, 2003, when time expired for filing a petition for writ of certiorari, ninety days following affirmance of the movant's conviction on direct appeal. Clearly the one year statute of limitations for filing a motion under §2255(f)(1) had expired when he filed this motion, absent the creation of a new right by the Supreme Court which activated the limitations period of §2255(f)(3).

retroactive. See Dodd v. United States, 365 F.3d 1273, 1280-81 (11th Cir. 2004), aff'd on other grounds, 545 U.S. 353 (2005); Ashley v. United States, 266 F.3d 671 (7th Cir. 2001)(holding that courts of appeals and district courts may decide retroactivity question when determining whether defendant's motion under 28 U.S.C. §2255 is timely). Both appellate and district courts may serve as the venue in which such retroactive applications are decided.[4] Thus, as correctly argued by the government, this Court finds that Begay is retroactively applicable to cases on collateral review and, therefore, this §2255 motion timely filed within one year of the Begay decision.[5]

Alternatively, pursuant to 28 U.S.C. §2255(4), the AEDPA's one-year limitation period begins to run from the "date on which the facts supporting the claim or claims could have been discovered through the exercise of due diligence." 28 U.S.C. §2255(4). The failure to file a notice of appeal, however, may affect the timeliness of a motion to vacate if the movant files a motion to vacate within one year of the date that he discovers through the exercise of due diligence that no appeal was filed after counsel was requested to do so. See: Aron v. United States, 291 F.3d 708 (11th Cir. 2002) (reiterating that, under §2255(4), a movant may

---

[4]An example of the Eleventh Circuit determining retroactivity is Ross v. United States, 289 F.3d 677 (11th Cir. 2002), cert. denied, 537 U.S. 1113 (2003), in which the Court held that Richardson v. United States, 526 U.S. 813 (1999), should be applied retroactively on collateral review. An example of a district court determining retroactive application is United States v. Glover, 2008 WL 2951085 (N.D.Okla. Jul. 28, 2008).

[5]It should be noted that since the filing of the government's response, the Eleventh Circuit in a recent unpublished opinion has held that Begay does not apply retroactively to a §2255 proceeding. See United States v. Coley, 2009 WL 2019859 (11th Cir. 2009). However, pursuant to 11th Cir. R. 36-2, unpublished opinions are not considered binding precedent. See also, Bravo v. United States, 532 F.3d 1154, 1164 n.5 (11th Cir. 2008).

file a timely motion to vacate within one year of the date when the facts supporting his claim could have been discovered through the exercise of due diligence); <u>Sandvik v. United States</u>, 177 F.3d 1269, 1271 (11th Cir. 1999); <u>Johnson v. Florida Dep't of Corr.</u>, 513 F.3d 1328, 1332 (11th Cir. 2008). In this case, the facts the movant has alleged, if true, meet both standards.

As previously noted, "[d]ue diligence ... does not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option, but rather to make reasonable efforts." <u>Aron v. United States</u>, 291 F.3d 708, 712 (11th Cir.2002). "Moreover, the due diligence inquiry is an individualized one that must take into account the conditions of confinement and the reality of the prison system." <u>Id</u>. (internal quotations omitted). The facts the movant alleges, if true, establish that he acted with due diligence to ensure his petition would be timely filed. The movant asserts he advised counsel to file a requested direct appeal. He believed the appeal was pending. When <u>Begay</u> was decided he immediately returned to the court filing a *pro se* motion which was denied by the court, which denial was affirmed on appeal. The movant's allegations suggest he acted with appropriate diligence.

Even if the <u>Begay</u> decision is not retroactive, as will be discussed more fully *infra*, this court recommends that equitable tolling apply and that the motion be considered timely filed. The movant's testimony at the evidentiary hearing was essentially the same as his assertions in his pleadings regarding timeliness. Moreover, it is uncontroverted that the movant expressed a desire to appeal his sentence, but during a brief, albeit inadequate consultation, it appears he was given misadvise regarding his

appellate rights. Defense counsel further perpetuated this misadvise by writing the movant a letter again reiterating that he had waived his appellate rights and, therefore, no appeal would be filed. Regardless, as previously determined, it is the finding of this Court that the motion was timely filed within one year of the Begay decision.

## Evidentiary Hearing Claim

Turning to the merits of the claims raised in this collateral proceeding, the movant asserts in **claim one** that his lawyer failed to file a direct appeal. At the evidentiary hearing, the movant explained that immediately after imposition of sentence he told defense counsel he wanted to meet with her to discuss filing a direct appeal, but counsel refused to do so. The claim was not conclusively refuted by the record, and warranted further evidentiary findings. At the October 8, 2009 evidentiary hearing, testimony was taken from the movant, and his criminal defense counsel, Assistant Federal Public Defender Lori Barrist.

The law is clear that in order for the movant to prevail on a claim of ineffective assistance of counsel, he must establish that 1) his counsel's representation fell below an objective standard of reasonableness; and 2) but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668 (1984). The standard is the same for claims of ineffective assistance on appeal. Matire v. Wainwright, 811 F.2d 1430, 1435 (11 Cir. 1987). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot

11

be satisfied.  Id. at 697; Waters v. Thomas, 46 F.3d 1506, 1510 (11 Cir. 1995).

Review of counsel's conduct is to be highly deferential. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 ("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11 Cir. 1992).  Because a "wide range" of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Rogers v. Zant, 13 F.2d 384, 386 (11 Cir. 1994).

Regarding a movant's right to an appeal, the law is also well settled "that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000); Montemoino v. United States, 68 F.3d 416, 417 (11th Cir. 1995)(per curiam). Because a defendant is entitled to a direct appeal from his conviction as a matter of right, Rodriquez v. United States, 395 U.S. 327 (1969), "an attorney's failure to file an appeal after the defendant requests him to do so entitles the defendant to an out-of-time appeal, even without a showing that there would have been any viable grounds for an appeal." Montemoino, 68 F.3d at 417; Flores-Ortega, 528 U.S. at 477.

The Supreme Court has held that counsel has a constitutional duty "to consult with the defendant about an appeal when there is

reason to think either (1) that a rational defendant would want to appeal ..., or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000). In making this determination, courts must take into account all information counsel knew or should have known." Id. In this case, the Eleventh Circuit acknowledged that by retaining appellate counsel, the movant indicated an interest in appealing, and under Flores-Ortega, triggered appellate counsel's duty to consult with the movant. United States v. Ramos, 301 Fed.Appx. 902, 904 (11th Cir. 2008).

Relying on the Supreme Court's definition of the term "consult," the Eleventh Circuit has held that "adequate consultation requires informing a client about his right to appeal, advising the client about the advantages and disadvantages of taking an appeal, and making a reasonable effort to determine whether the client wishes to pursue an appeal, regardless of the merits of such an appeal." Thompson v. United States, 504 F.3d 1203, 1206 (11th Cir. 2007)(citing, Frazer v. South Carolina, 430 F.3d 696, 711 (4th Cir. 2005)); Gomez-Diaz v. United States, 433 F.3d 788, 792 (11th Cir. 2005). A defendant should be provided with enough information to either "intelligently and knowingly [] assert[] or waive[] his right to an appeal. Thompson v. United States, 504 F.3d 1206. If, however, two of the three elements of adequate consultation are not satisfied, then it is apparent that counsel failed to consult with the movant regarding his appellate rights. Flores-Ortega, 528 U.S. at 478.

Although there was a limited appeal waiver in this case, the Eleventh Circuit has clarified that counsel must still file a

notice of appeal if directed to do so by his client, unless the movant has waived all of his appellate rights. See, Gomez-Diaz v. United States, 433 F.3d 788 (11 Cir 2005). Specifically, the Eleventh Circuit held that the general rule that an attorney who disregards instructions from his client to appeal acts in a manner that is *per se* professionally unreasonable applies with equal force where a defendant has waived some, but not all, of his appeal rights. Id. at 794.

It is uncontroverted that immediately after sentence was imposed, there was a brief discussion between the movant and defense counsel regarding his appellate rights. In order to satisfy the first element of adequate consultation, it must be demonstrated that the movant was advised about his right to an appeal by defense counsel. Thompson v. United States, 504 F.3d at 1206.

At the evidentiary hearing in this case, the movant was unequivocal that he asked AFPD Barrist to visit him because he wanted to discuss pursuing an appeal. Specifically, the movant recalled being advised by counsel that the PSI established his guideline range between 70 to 87 months in prison. Prior to sentencing, the movant was unaware that his guideline exposure would be greater than that contained in the PSI. However, he recalled that at one point during sentencing, the court realized and the parties agreed that the correct guideline range was 84 to 105 months in prison. The movant claims he and his family were surprised to learn that the range was being increased, thereby increasing his potential prison time. The movant acknowledged that at the conclusion of sentencing, the district court advised him that he had a right to appeal the sentence, and that his counsel

14

would do so if he so desired.

At first, the movant testified that counsel never visited him to discuss his appellate rights. However, the movant then recalled that after imposition of sentence, counsel met with him briefly while he was in lockup, at which time he advised her that he wanted to prosecute an appeal, and requested that she visit him at a later date so they could discuss the matter further. Although the plea agreement contained an appeal waiver, the movant was candid in his testimony that, given the confusion regarding his guideline range at sentencing, and further given the fact that the guideline range as initially contained in the PSI was increased during the sentencing proceeding, he believed that the exceptions to the waiver had been met, thereby permitting him to prosecute a direct appeal. Moreover, the movant explained that he was extremely unhappy with the probation officer's increase in his guideline range during sentencing which precluded him from having an opportunity to challenge the determination prior thereto.

On the other hand, AFPD Lori Barrist, a seasoned criminal defense attorney, testified that the movant never asked her to prosecute a direct appeal at any time after their brief meeting. AFPD Barrist did, however, confirm that she had a brief discussion with the movant regarding his appellate rights immediately after sentencing, wherein she advised him that he had waived his right to file a direct appeal. According to counsel, she advised the movant that if he proceeded with the appeal, it would most likely be dismissed based on the appellate waiver. Counsel candidly agreed that at the time of sentencing, the parties, including the court, were confused regarding the movant's sentence exposure, and it was

15

possible the court was unaware of an addendum to the PSI which added points for a prior offense, thereby raising the guidelines exposure range.

According to Barrist, after their brief meeting, the movant never called or wrote her asking her to appeal his sentence. She acknowledged preparing a letter dated June 25, 2007, exactly ten days after imposition of sentence, which states in pertinent part as follows:

> Enclosed is the judgment sentencing you to 72 months. As you know, your guideline range was 84 to 105 months. As part of your plea agreement, you gave up your right to appeal your sentence. After court, we discussed this and the fact that the judge gave you less time than called for under the guidelines. **Accordingly, no appeal will be filed in your case.** Good luck in the future.

(June 25, 2007 Letter) (emphasis added).

As can be readily discerned from the spirit and tone of the above letter, it appears that Attorney Barrist advised the movant that because he had waived his right to appeal, she would not be filing a notice.

As will be recalled, it is uncontroverted that AFPD Barrist met with the movant briefly immediately after sentence was imposed, but before he was removed from the courthouse. The letter is dated 10 days after the time sentence was imposed. Upon receipt of the letter, the movant, who was aware of the appeal period, could very well have believed that his appeal rights had been forfeited by counsel. No testimony, however, was elicited from the movant regarding whether or not he received the subject letter. From the

16

tone and substance of this letter, however, it is once again evident that the movant was desirous of appealing his sentence and informed counsel accordingly. It is equally evident that counsel misadvised the movant that he had waived his appellate rights, and therefore, no appeal would be filed.

The next question before the Court is, however, whether the second element has been met. In other words, whether counsel advised the movant of the advantages and disadvantages of pursuing an appeal, so that he could make an informed decision whether to proceed with the appeal. It should be noted, that the brief meeting immediately after sentencing hardly constitutes adequate consultation. To the contrary, it is clear that defense counsel focused on the fact that there was an appellate waiver which she believed precluded the movant from pursuing a direct appeal. It is evident from her testimony that AFPD Barrist failed to provide the movant with meaningful consultation in order to properly advise the movant of the advantages and disadvantages of pursuing an appeal. Her representations that the movant had waived his appellate rights was also inaccurate as the Eleventh Circuit has held, that waivers such as the one executed by the movant in this case, are not absolute and therefore movant's can still prosecute a direct appeal. <u>Gomez</u>, <u>supra</u>.

After careful consideration of the testimony of the movant, in the context of this case and close observation of his demeanor, as well as careful attention to and review of the testimony of defense counsel and, taking into account the respective interests of the parties in the outcome of this proceeding, the undersigned finds credible the movant's testimony that he was desirous of filing a

17

direct appeal. The court rejects counsel's testimony that the movant agreed with counsel's misadvice that the waiver precluded him from pursing the appeal. In fact, the movant's desire for an appeal is further corroborated by the fact that he and his family were unpleasantly surprised when the guideline range was increased during the sentencing proceeding. The Court is persuaded that the movant expressed a desire to appeal, requested that counsel meet with him to further discuss the issues to pursue on appeal, but his desire was not honored.

This court finds that the movant never agreed to forego an appeal, but that counsel abandoned the movant, mistakenly believing, contrary to Eleventh Circuit precedent, that the appellate waiver was absolute. At best, counsel misunderstood the movant's intentions. It is the court's finding, based in part on counsel's letter, that counsel's refusal to pursue a direct appeal was based on an incorrect legal premise. Thus, this court finds that the movant always desired to challenge on appeal the lawfulness of his sentence.

In conclusion, the court finds that the movant requested a direct appeal, but none was filed. Alternatively, the court concludes that even if no request was made, counsel failed provide adequate consultation so that the movant could make an informed decision regarding his appellate rights. Morever, the court finds that given the confusion regarding the movant's guideline range as adduced during the sentencing proceedings, a reasonable defendant would have desired pursuing an appeal. Therefore, counsel had a duty to conduct meaningful consultation with his client and she failed to do so. Consequently, this court finds that the movant is

18

entitled to an out-of-time appeal.

## Remaining Claim

Normally, the remaining claim challenging his sentence under Begay should be dismissed without prejudice to the filing of a §2255 motion once the movant convictions become final after resolution of his direct appeal. See McIver v. United States, 307 F.3d 1327, 1332, fn2 (11th Cir. 2002).[6] This is true because an order granting a §2255 petition, and reimposing the same sentence, "resets to zero the counter of collateral attacks pursued," and therefore "does not render subsequent collateral proceedings second or successive." McIver v. U.S., 307 F.3d 1327, 1332 (11th Cir. 2002)(citations omitted).

---

[6]In McIver, the Eleventh Circuit reasoned that dismissal was appropriate because:

> [T]here are significant inefficiencies to any other approach. If the district court were to deny a collateral claim under a different standard of review than applies on direct appeal, then the defendant might be entitled to relitigate the same claim in his reinstated direct appeal. Moreover, both the government and the petitioner could pursue collateral appellate proceedings on other claims that the outcome of the direct appeal might render unnecessary. Although in Clisby v. Jones, 960 F.2d 925, 936 (11th Cir. 1992), we instructed district courts to resolve all claims in petitions brought pursuant to 28 U.S.C. § 2254, equally clear precedent of this Court directs that collateral claims should not be entertained while a direct appeal is pending. See Welsh v. United States, 404 F.2d 333 (5th Cir. 1968) (binding authority in the Eleventh Circuit under Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc)); see also Rules Governing 2255 Proceedings, Rule 5, advisory committee note; United States v. Cook, 997 F.2d 1312, 1319 (10th Cir. 1993); United States v. Gordon, 634 F.2d 638, 638-39 (1st Cir. 1980); United States v. Davis, 604 F.2d 474, 484 (7th Cir. 1979); Jack v. United States, 435 F.2d 317, 318 (9th Cir. 1970); Womack v. United States, 395 F.2d 630, 631 (D.C. Cir. 1968); Masters v. Eide, 353 F.2d 517 (8th Cir.1965). Once the court has determined that the petitioner is entitled to a direct appeal, such an appeal is "pending" for all relevant policy purposes. Id.

However, for purposes of judicial economy it should be noted that in light of Begay and Archer, the movant's enhanced sentence pursuant to U.S.S.G. §2K2.1(a)(4)(A) based on his prior offense for carrying a concealed firearm can no longer stand. See Begay, supra and Archer, supra. Consequently, the movant's base offense would commence at 14, rather than 20, resulting in a presumptive guideline range of 46 to 57 months in prison, after calculating the enhancements and reductions based on acceptance of responsibility. (Cv-DE#9:22-23).

As discussed previously in this Report, while the Supreme Court is the only authority capable of creating a new right, even a district court may determine retroactive applicability. See Dodd v. United States,[7] 365 F.3d 1273, 1280-81 (11th Cir. 2004), citing, Garcia v. United States, 278 F.3d 1210, 1213 n. 4 (11th Cir.). cert. den'd, 537 U.S. 895 (2002); see also United States v. Swinton, 333 F.3d 481, 487 (3d Cir.)("We conclude-and the parties agree-that the statute of limitations provision of § 2255 allows district courts and courts of appeals to make retroactivity decisions."), cert. den'd, 540 U.S. 977 (2003).

Here, as in Dodd, the Government has conceded that the Supreme Court created a new right in Begay. (Cv-DE#9). The newly-created right applicable to the movant in this case changes the manner in which his prior convictions, in particular for carrying a concealed firearm, are deemed to be a "violent felony" under the relevant statute. Section 924(e)(2)(B) defines a "violent felony" as any

---

[7]In addition to holding that district courts may determine retroactivity, the Eleventh Circuit in Dodd also set forth its reasoning in detail regarding when the statute of limitations begins to run under 28 U.S.C. § 2255(f)(3).

crime for which the punishment exceeds one year in prison and either (i) possesses the element of "use, attempted use, or threatened use of physical force against the person of another;" or (ii) is a "burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."

As will be recalled, the movant was convicted in relevant part of being a felon in possession of a firearm and his guideline range enhanced based on a prior conviction for carrying a concealed firearm. The statutory definition of "violent felony" incorporates two separate clauses, the latter of which ("clause (ii)") includes any felony that "is [a] burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious risk of physical injury to another." See 18 U.S.C. §924(e)(2)(B)(ii)(emphasis added). The scope of that section was at issue when the United States Supreme Court decided Begay in April 2008.

In Begay, the Supreme Court held that New Mexico's felony DUI offense fell outside the scope of the ACCA's "violent felony" definition. Begay, 128 S.Ct. at 1584-85, 1588. In Begay, the defendant was convicted, like the movant here, of being a felon in possession of a firearm and was sentenced as an armed career criminal under the relevant statute. The Court reasoned that although a DUI involves conduct that could present a serious risk of physical injury to another person, a DUI is too dissimilar from the enumerated examples under §924(e)(2)(B)(ii). Id. at 1584. The type of crime intended to be included as a "violent felony" must be similar "in kind as well as in degree of risk posed" to the crimes

of burglary, arson and the other crimes listed. <u>Begay</u>, 128 S.Ct. at 1585. Hence, the Supreme Court concluded that a DUI does not constitute a "violent felony" for purposes of the statute.

Two months after the Supreme Court's decision in <u>Begay</u>, the Eleventh Circuit issued its decision in <u>United States v. Archer</u>, 531 F.3d 1347 (11th Cir. 2008).[8] In <u>Archer</u>, the Eleventh Circuit re-considered whether a prior conviction for carrying a concealed firearm was a "crime of violence" within the meaning of the Sentencing Guidelines' career offender enhancement. <u>Archer</u>, 531 F.3d at 1347. The Guidelines provide for a career offender enhancement where a defendant has at least two prior felony convictions for either a "crime of violence" or a controlled substance offense. <u>Id</u>. at 1349 (<u>citing</u>, U.S.S.G. §4B1.1(a)). Section 4B1.2 defines a "crime of violence" <u>inter</u> <u>alia</u>, as any felony that "is [a] burglary of a dwelling, arson, extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." The Eleventh Circuit in <u>Archer</u> noted that <u>Begay</u> was "instructive because of the similar definitions of a 'crime of violence' in the Guidelines and of a 'violence felony" in [the] ACCA." <u>Id</u>. at 1350 n.1. Indeed, the Eleventh Circuit stated that it "has repeatedly read the definition of 'violent felony' under §924(e) of the Armed Career Criminal Act as 'virtually identical' to the definition of 'crime of violence' under U.S.S.G. §4B1.2." <u>Archer</u>, <u>supra</u> at 1352..

Like the <u>Begay</u> Court, the <u>Archer</u> Court assumed that carrying a concealed firearm presented a serious risk of injury to another.

_____

[8] <u>Archer</u> was decided on June 26, 2008.

However, in Archer, the Eleventh Court concluded that carrying a concealed firearm does not involve the aggressive, violent conduct that is inherent in the enumerated crimes. Id. at 1351. Rather, the Eleventh Circuit found that carrying a concealed firearm "is a passive crime centering around possession, rather than around any overt action" or "purposeful conduct." Id. at 1351 (emphasis in original). The Eleventh Circuit observed that Begay "set forth a new standard to evaluate which crimes constitute 'violent felonies' and 'crimes of violence,' that Begay was "clearly on point," and that it is "thus bound to follow this new rule of law."[9] Id. at 1352 (emphasis added).

Accordingly, the Eleventh Circuit held that after Begay, carrying a concealed firearm did not involve a crime of violence within the meaning of the career offender sentencing guidelines. United States v. Archer, 531 F.3d 1347 (11th Cir. 2008). As concluded correctly by the government (Cv-DE#9), the movant's prior conviction for carrying a concealed firearm no longer qualified as a crime of violence for purposes determining the movant's base offense level under the guidelines. In light of Begay and Archer, it appears that the movant guideline range can no longer stand.[10]

_____

[9]In so holding, the Eleventh Circuit noted that a specific intent to conceal a weapon is not an element of the crime and that the lack of required specific intent makes carrying a concealed weapon more similar to a DUI than to the enumerated crimes under the ACCA. Archer, supra.

[10]It should further be noted that this District Court has had occasion to consider the identical issue and granted relief in Davis v. United States, Case No. 08-61066-Civ-Cohn; Frederick v. United States, Case No. 08-22134-Civ-King; Walden v. United States, 2009 WL 2163182 (S.D. Fla. July 17, 2009). The Eleventh Circuit has held that it is not error "for a court to take judicial notice of related proceedings and records in cases before that court." Kinnett Dairies, Inc., v. J. C. Farrow, etc., et al., 580 F.2d 1260, 1277 n.33 (5th Cir. 1978), citing, State of Florida Board of Trustees of the Internal Improvement Trust Fund v. Charley Toppino and Sons, Inc., 514 F.2d 700, 704 (5th Cir. 1975). See also Aloe Creme Laboratories v. Francine Co., 425 F.2d 1295 (5th Cir. 1970) (per curiam)("The District Court clearly had the right to take notice of its own files

<u>Retroactive Application of New Rule</u>

Moreover, as previously noted, the fact that the Supreme Court has not held that such a new right should be applied retroactively on collateral review does not prevent this Court from doing so. <u>Dodd</u>, 365 F.3d at 1278. On the contrary, both appellate and district courts may serve as the venue in which such retroactive applications are decided.

Generally, new constitutional rules of criminal procedure created by the Supreme Court may not be applied to cases on collateral review. <u>See Teague v. Lane</u>, 489 U.S. 288, 310 (1989). <u>Teague</u>, however, permits an exception, to-wit: application of a new substantive, as opposed to a new procedural, rule of criminal law created by the Supreme Court may be applied retroactively on collateral review. <u>Ross v. United States</u>, 289 F.3d 677, 681 (11th Cir. 2002)(observing that "<u>Teague</u>'s bar, however, does not apply when the Supreme Court decides a new substantive rule of criminal law as opposed to a new procedural rule[ ]" and stating that "a new rule is substantive when it interprets 'the meaning of a criminal statute enacted by Congress' so that the conduct for which a defendant was convicted may no longer be illegal.") (<u>quoting</u>

---

and records and it had no duty to grind the same corn a second time." Id. at 1296). <u>See</u> <u>also</u>, <u>Fed.R.Evid.</u> 201(b) which provides that "[A] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

Moreover, other district courts to have considered the issue have also concluded that the motion should be granted and the movant resentenced. <u>See</u> <u>United States v. Radabaugh</u>, 2009 WL 565065 *5 (N.D. Ok. 2009); <u>George v. United States</u>, 2009 WL 1370858 (M.D. Fla. 2009). <u>But see</u>, <u>United States v. Narvaez</u>, 2009 WL 1351811 (W.D. Wis. 2009)(holding that <u>Begay</u> is not retroactively applicable to cases on collateral review).

<u>Bousley v. United States</u>, 523 U.S. 614, 620 (1998)). Under the reasoning of <u>Ross</u>, therefore, if the new rule announced by the Supreme Court makes conduct for which a defendant was convicted no longer illegal, then the meaning of that statute has been substantively changed. <u>Ross</u>, 289 F.3d at 681.

This Court finds, as did the district court in <u>United States v. Glover</u>, 2008 WL 2951085 (N.D.Okla. Jul. 28, 2008), that <u>Begay</u> announced a new substantive rule such that the conduct of carrying a concealed firearm no longer constitutes a prior conviction capable of being used to enhance a sentence under §924(e)(2). <u>See Ross</u>, 289 F.3d at 681. Such conduct is now categorically outside the reach of the federal statute because the new rule enunciated in <u>Begay</u> "narrow[ed] the scope of [the ACCA] by interpreting its terms." <u>See</u> <u>Schriro v. Summerlin</u>, 542 U.S. 348, 351-52 (2004).

Consequently, as also conceded correctly by the government (Cv-DE#9), because the Supreme Court and the Eleventh Circuit have both removed the crime of carrying a concealed firearm from consideration as a "violent felony" warranting enhancement under the statute, the creation of this substantive criminal rule change should apply retroactively to the movant. In light of <u>Begay</u> and <u>Archer</u>, a prior conviction for carrying a concealed firearm no longer qualifies as a predicate offense under the Guidelines. Since the movant's sentence was based on a prior felony conviction for carrying a concealed firearm, which now does not qualify as predicate offense, the new substantive rule announced in <u>Begay</u> applies retroactively and warrants that the movant's sentences be vacated.

As to procedural default, the government correctly points out that this issue was not raised on direct appeal, however, the movant has established cause and prejudice for the default because he was under the mistaken belief that a direct appeal would be prosecuted. Even if that belief was error, as previously determined by the Court, had counsel adequately consulted with the movant, a reasonable defendant in the movant's position would have desired to appeal his sentence, thereby insuring that his case remained in the pipeline for relief pursuant to Archer.

Regardless, the movant, is not without a remedy. Contrary to the government's argument, the Court agrees with the movant's position that the "actual innocence" doctrine applies within the context of challenging a predicate offense utilized to determine a movant's guideline sentence. See United States v. Mikalajunas, 186 F.3d 490, 495 (4th Cir. 1999) (concluding, in light of the reasoning of United States v. Maybeck, 23 F.3d 888, 893 (4th Cir. 1994), that "actual innocence applies in non-capital sentencing only in the context of eligibility for application of a career offender or other habitual offender guideline provision.")(and other cases cited); see also Haley v. Cockrell, 306 F.3d 257, 265-66 (5th Cir. 2002) (adopting reasoning of Maybeck and Mikalajunas), vacated and remanded on other grounds, Dretke v. Haley, 541 U.S. 386 (2004).[11]

---

[11]Although the Supreme Court's grant of certiorari in this case was designed to resolve the conflict among several circuit courts of appeals with regard to the application of the "actual innocence" doctrine within the context of a noncapital sentence, the Court ultimately determined that there was no need to resolve that issue "[b]ecause the District Court failed to consider alternative grounds for relief urged by respondent, grounds that might obviate any need to reach the actual innocence question[.]" Dretke v. Haley, 541 U.S. 386, 388-89 (2004). Thus, the Court vacated the judgment of the Fifth Circuit Court of Appeals and remanded for further proceedings. 541 U.S. at 396.

Under the totality of the circumstances present here, the movant has clearly established that he is entitled to relief under §2255 for numerous reasons, and therefore vacatur of his judgment is warranted and a new sentencing hearing recommended. First, as the government concedes and the Court has independently determined, Begay applies retroactively to this case on collateral review such that the movant's prior conviction for carrying a concealed firearm no longer qualify as predicate offense for purposes of establishing his applicable guideline range. Second, the movant's motion is timely and not subject to procedural default because of the "actual innocence" doctrine, as well as, the retroactivity of Begay. Also, the movant, absent the enhancement, as conceded by the Government, would have necessarily received a lower sentence, thus entitling him to be resentenced. Finally, the movant is entitled to a direct appeal.

### Remedy

The Eleventh Circuit has held, however, that when an out-of-time appeal is granted in a criminal case as a remedy in a §2255 proceeding, the remedy should be effected by (1) vacating the criminal judgment; (2) reimposing the same sentence; (3) upon reimposition of that sentence, advising the defendant of all of his rights associated with a criminal appeal; and, (4) advising the defendant that the time for filing the notice of appeal from the re-imposed sentence is 10 days. See United States v. Phillips, 225 F.3d 1198, 1201 (11th Cir. 2000).

The facts and remedy in Phillips, however, are distinguishable from the facts in the present case. In Phillips, the petitioner

sought relief on the ground that he was not informed of his right to appeal *in forma pauperis*. Id. at 1199. Phillips contended he wanted to appeal challenge the court's miscalculation of his sentence, but was denied the right to do so. Id. Unlike Phillips, the movant in the present case claims that his attorney provided ineffective assistance by failing to consult with him regarding an appeal based on the arguments set forth in the Begay and Archer cases and by failing to file a direct appeal. The movant claims that the court not only miscalculated his sentence, but further claims that the law has changed regarding the way his sentence should be calculated. Due to this change in the law pursuant to Begay and Archer, the movant's sentence was imposed in violation of the laws of the United States.

<u>Conclusion</u>

It is therefore recommended that: (1) this motion to vacate be granted as to both claims raised herein; (2) that a new sentence hearing be had in conformity with the holdings in Begay and Archer; and, (3) that the movant be permitted to file a direct appeal following resentencing.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Signed this 19th date of October, 2009.

_____

UNITED STATES DISTRICT JUDGE

28

```
cc:  Marc D. Seitles, Esquire
     Attorney for Movant
     169 E. Flagler Street, #1200
     Miami, FL 33131
     Phone: 305/379-6667
     Fax: 305/379-6668

     Lothrop Morris, AUSA
     U.S. Attorney's Office
     500 Australian Avenue, Suite 400
     West Palm Beach, FL 33401
     Phone: 561/820-8711
     Fax: 561/820-8777
```