# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 09-80172-CIV-HURLEY

DWAINE EASON,
     **Movant,**

**vs.**

UNITED STATES OF AMERICA,
     **Respondent**
_____/

### ORDER REJECTING MAGISTRATE JUDGE'S REPORT & RECOMMENDATION AND DENYING PLAINTIFF'S MOTION TO VACATE HIS SENTENCE PURSUANT TO 28 U.S.C. § 2255

**THIS CAUSE** is before the court upon the movant's motion to vacate, set aside or correct

his sentence under 28 U.S.C. § 2255 [DE# 1], which was previously referred to United States

Magistrate Judge Patrick White pursuant to 28 U.S.C. §§ 636-39 and Rule 72 of the Federal Rules

of Civil Procedure for a recommended disposition. On October 19, 2009 Judge White filed a report

and recommendation upon the motion, recommending that it be granted, that a new sentencing

hearing be held, and that movant be allowed to file a direct appeal following re-sentencing [DE# 20].

The government has since filed objections to the report [DE# 24], which the court has

reviewed in conjunction with the movant's response filed February 1, 2010 [DE# 30], the

government's reply filed February 23, 2010 [DE# 33], the government's supplemental response

filed April 6, 2010 [DE# 36] and movant's supplemental response filed April 13, 2010 [DE# 39].

Pursuant to 28 U.S.C. § 636(b)(1)(C), the court has further made a *de novo* determination as

to those portions of the report with respect to which formal written objection has been filed. Having

done so, the court respectfully declines to accept the Magistrate Judge's recommended disposition

of the motion, which shall be denied for the reasons discussed below.

## Summary of Claims

Eason's motion asserts two claims. First, he claims ineffective assistance of counsel based on his attorney's failure to file a direct appeal of his sentence. Second, he claims that he is entitled to a vacatur of his sentence because he was erroneously sentenced as a career offender under the sentencing guidelines, U. S. S.G. § 4B.1.1, based in part on a previous conviction for carrying a concealed firearm.

At the time of Eason's sentencing, the Eleventh Circuit considered carrying a concealed firearm a "crime of violence" under 4B.1.1(a). *United States v Gilbert*, 138 F.3d 1371 (11th Cir. 1998). However, the Eleventh Circuit has since recognized, in accordance with the new rule of law announced in *Begay v United States*, 553 U.S. 137 (2008), that carrying a concealed firearm is not a "crime of violence" under U. S. S. G. § 4B.1.1. *See United States v Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008) (abrogating *Gilbert*). Thus, Eason argues that his concealed firearm conviction can no longer serve as a predicate "crime of violence" in light of *Begay* and *Archer*, that he is "actually innocent" of the career offender enhancement, and that his sentence should accordingly be set aside and reconsidered without the career offender enhancement.

Although this sentencing miscalculation was never raised on direct appeal, Eason cites, as cause for procedurally defaulting on this claim, the fact of his counsel's failure to file an appeal on his behalf. That is, had his lawyer been effective and timely filed an appeal on his behalf, Eason contends his case would have remained in the pipeline for corrective relief pursuant to *Archer* and *Begay* which issued shortly thereafter.

**Facts & Procedural History**

On March 15, 2007, Eason pled guilty to one count of knowingly possessing a firearm and ammunition as a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Pursuant to a contemporaneous written plea agreement [DE# 23], he agreed to waive his right to appeal, a waiver which permitted of exception only in the event the sentence ultimately imposed exceeded the maximum permitted by statute, was the result of an upward departure from the guidelines range established at sentencing, or was the subject of an appeal filed by the government.

At his sentencing hearing held June 14, 2007, there was some confusion regarding the applicable sentencing guideline range. Based on the initial PSI and first addendum, the probation officer had initially determined the range to be 70 to 87 months, and both counsel initially expressed agreement on this calculation in response to questioning by the court. However, following further inquiry by the court, in conjunction with defendant's then pending motion for a downward departure, counsel for defendant identified a second addendum to the PSI in which the probation officer adjusted the defendant's total criminal history points, resulting in a criminal history category of V, and a corresponding guideline range of 84 to 105 months in prison. With the correct sentencing range thus established, the court denied the defendant's request for downward departure based on over-representation of the criminal history, and, after considering the relevant advisory guidelines range and pertinent statutory factors, ultimately sentenced movant to a term of 72 months imprisonment, a sentence below the advisory guidelines range.

The corresponding judgment of conviction entered on June 18, 2007 and became final, at the latest, on July 2, 2007, ten days after entry of judgment.

A year later, on August 1, 2008, Eason filed a *pro se* "nunc pro tunc" motion for relief based

on "actual innocence," alleging an illegal sentencing enhancement under the Supreme Court's intervening decision in *Begay* and the Eleventh Circuit's decision in *Archer*. This court summarily denied the motion, finding no indication from the Supreme Court that *Begay* was retroactive. On appeal, the Eleventh Circuit liberally construed Eason's motion as one made pursuant to § 3582(c) and Rule 35, but ultimately found that neither statute permitted the relief requested. *United States v Eason*, 2009 WL 1059628 (11ᵗʰ Cir. April 21, 2009)

On February 6, 2009, Eason filed the current motion to vacate his sentence under 28 U.S.C. § 2255, asserting ineffective assistance of counsel based on failure to file an appeal, and a *Begay*-based sentencing miscalculation, as summarized above. The motion is now before the court for disposition.

## Discussion

### Claim 1

In order to prevail on his claim that counsel was constitutionally ineffective for failing to file an appeal, Eason must show that counsel's performance was deficient and that this deficiency prejudiced him. *Strickland v Washington*, 466 U.S. 668 , 104 S. Ct. 2052 , 80 L. Ed.2d 674 (1984); *Roe v Flores -Ortega*, 528 U.S. 470, 476-77, 120 S. Ct. 1029, 145 L. Ed.2d 985 (2000)(*Strickland* test applies to claim that lawyer was ineffective for failing to file a notice of appeal).

"[A] lawyer who disregard specific instructions from the defendant to file a notice of appeal acts in manner that is professionally unreasonable." *Roe v Flores-Ortega*, 528 U.S. 470 (2000). Because a defendant is entitled to a direct appeal from his conviction as a matter of right, *Rodriguez v United States*, 395 U.S. 327 (1969), an attorney's failure to file an appeal after the defendant specifically requests him to do so entitles him to an out of time appeal, even without showing that

4

the appeal would have had merit.  *Flores Ortega*, 528 U.S. at 477.

Even where a defendant has not specifically instructed his attorney to file an appeal, however, the court must still determine whether counsel's failure to consult with the client about an appeal itself constitutes deficient performance.  In *Flores Ortega*, the Supreme Court rejected the concept of a "bright line" rule requiring counsel to always consult with the defendant  regarding an appeal, instead holding that counsel has a constitutionally imposed duty to consult with his or her client about an appeal only where there is  reason  to think either (1)  that any rational defendant would want  to appeal (for example, because there are non-frivolous  grounds for appeal), or  (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. *Flores-Ortega*, 528  U.S. at 480, 120 S. Ct. at 1036.  *See also Thompson v United States*, 504 F.3d 1203 (11th Cir. 2007);  *Frazer v South Carolina*, 430 F.3d 696 , 711 (4th Cir. 2005).

In this case, the Magistrate Judge found that counsel for movant was ineffective, either because she disregarded a specific request to appeal made by Eason, or, "even if no request was made,"  because she "failed [to] provide adequate consultation" which would have allowed Eason to make an informed decision regarding his appellate rights, in a situation where "a reasonable defendant would have desired pursuing an appeal."

Following independent review of the transcript of the evidentiary hearing conducted before Magistrate Judge White, the court finds insufficient evidence to support the fact  finding that Eason specifically requested his attorney to file an appeal, and insufficient evidence to support the alternative conclusion that a duty to consult was triggered in any event because any reasonable defendant would have wanted to pursue an appeal under the circumstances of this case.

Although Eason consistently testified that he always wanted  to appeal his sentence and

5

always wanted to talk to his attorney about his appellate rights,  his testimony, viewed as a whole,

does not support the  conclusion that he ever *expressed* that  desire to his attorney, public defender

Lori Barrist.  The following testimony elicited from Eason on this point is illustrative:

> Q. Do you recall visiting with Ms. Barrist after your sentencing hearing?
>
> A. No sir, not at all.
>
> Q. Did she ever come to see you at Gun Club?
>
> A. Prior to my sentencing, no.
>
> Q. Not prior or – I'm referring after your sentencing hearing.  After your sentence hearing  did Ms. Barrist ever come to visit you?
>
> A. No sir.
>
> ....
>
> Q. Did you ever speak with Ms. Barrist by phone?
>
> A. No, sir.
>
> Q.  ...   Did you want to appeal your sentence after Judge Hurley's ruling?
>
> 7A. Yes sir.
>
> Q.  Mr. Eason, did you ever have the opportunity to advise your lawyer that you had the desire to appeal?
>
> A. No, not at all.
>
> Q.  Why not?
> A. I was never visited.
>
> Q. Would it be fair to say that you – after Judge Hurley's statement  on the record that Ms. Barrist  would discuss with you whether you wanted to appeal, did you expect her to visit you?
>
> A.  Yes sir.
>
> Q.  And did you ever advise Ms. Barrist that you wanted to appeal?

6

A. Yes, sir.

Q.  And when did you advise her of that?

A. When I spoke to her at the hearing, I figured I told her to come see me at the county jail.

Q. And did she ever come see you?

A. No sir.

Q. Okay. Did you desire to appeal the decision  made by Judge Hurley?

A. Yes, sir.

[Transcript of Proceedings (Direct Examination by Defense Counsel); DE # 24-3, pp. 16-18].

Although Eason at one juncture agrees  that he did advise Attorney Barrist to file an appeal, when next pressed to explain when he gave that direction  he simply states,  " I figured I told her to come see me at the county jail."   Even if this testimony is credited,  it establishes only that Eason asked Barrist to visit him in jail, not that he asked her to file an appeal on his behalf.

Eason's  subsequent  testimony  on  cross-examination  by  the  government  establishes, conclusively,  that he never made such a request to Barrist, either in  person, by letter  or phone call:

Q. And now the judge also, as you mentioned earlier, instructed  you that you had the right to appeal and that it was your right to assert, not up to the defense attorney to do it for you, you had to tell the defense attorney to file that on your behalf, correct?

A. Yes , sir.

Q. So after he gave you that sentence,  did you tell Ms. Barrist at that time that you wanted to appeal?

A.  At that  time, I wanted to speak with Ms. Barrist about my options because  I wasn't sure if it would help me or not.

7

Q. Did you tell her at that time that you wanted to appeal.?

A. At that particular  time, no, I did not sir.

Q. Did you write her and tell her that you wanted to appeal?

A. No sir, I did not write her.

Q. Did you call her and tell her that you wanted to appeal?

A. No sir.

[Transcript, pp. 23-24].

Attorney Barrist likewise  testified that Eason never instructed her to file an appeal, testimony which

is fully consistent with Eason's own testimony on this point.

On the other hand, Attorney Barrist and Eason part ways on whether Barrist ever met with

him post sentencing to discuss appellate issues.  According to Barrist, she did meet him at the

courthouse lock-up, on the same day of sentencing, and reminded him at that time that he had a right

of appeal but had waived it:

A.  After the sentence,  we discussed that he had a right – well, the judge informed him he had a right to appeal and afterwards, we discussed that he had a right to appeal the sentence  but that he had waived  his right to appeal and that if he wanted to appeal, he could appeal, however it would most likely be dismissed because  he had waived his right to appeal as part of his plea agreement.

Q. Did he ask you to appeal?

A. No.
Q. Did he ever write you subsequent to the sentencing and ask you to appeal?

A. No.

Q. Did he ever call you and ask you to appeal?

A. No.

8

    Q.  If he had, would you have appealed?

    A. Yes.

[Transcript of Proceedings; DE # 24-3,  pp. 34-35].

....

    Q. Did you ever visit Mr. Eason after the sentencing hearing at either the county jail or at the Federal Detention Center in Miami?

    A. I visited him after court in the lock- up.

    Q. Okay. So is it fair to say that you did not see him at Palm Beach County Jail or the Federal Detention Center  after the sentencing  hearing?

    A.  I saw him after the sentencing  hearing at the lock up in the West Palm Beach courthouse to discuss whether he wanted to appeal.

....

    A.  Like I said, we spoke after court and he told me he did not want an appeal.

[Transcript of Proceedings; DE# 24-3, pp. 54-56].

    Ms. Barrist also testified that she sent a follow up letter to Eason  dated June 25, 2007, stating

in pertinent part:

    Enclosed is the judgment  sentencing you  to 72 months.  As you know, your guidelines range was 84 to 105 months.  As part of your plea agreement, you gave up your right to appeal your sentence.  After court, we discussed this and the fact that the judge gave you less  time than called for under the guidelines.  Accordingly, no appeal will be filed in your case.  Good luck in the future.

[Transcript of Proceedings; DE# 24-3, p. 34].

    Even if the court credits all of Eason's testimony, it is insufficient  to sustain a  fact finding

that Eason in fact asked Attorney Barrist to file  an appeal on his behalf.  It is also insufficient to

support the Magistrate Judge's alternative  finding that,  regardless of whether Eason actually

requested an appeal,  Attorney Barrist rendered constitutionally ineffective assistance by failing to

adequately consult with Eason concerning his appellate rights.

On the latter point, the Magistrate Judge found, given the confusion over the applicable guideline range which unraveled during sentencing, and the defendant's "unpleasant surprise" over the resulting increase in the guidelines range revealed at that juncture, that a reasonable defendant in Eason's position would have wanted to pursue an appeal, triggering a duty on the part of Attorney Barrist to at least consult with Eason concerning his appellate rights. Instead, Magistrate Judge White concluded that counsel gave misadvice and "abandoned the movant, mistakenly believing, contrary to Eleventh Circuit precedent, that the appellate waiver was absolute."

In *Thompson v United States*, 504 F.3d 1203 (11th Cir. 2007), the Eleventh Circuit found ineffective assistance based on counsel's failure to "adequately consult" regarding appellate rights where, after sentencing, the defendant expressed "unhappiness" with his sentence, as compared to that of his co-defendants, and specifically asked counsel "why the judge told him he had a right to appeal if he had pled guilty." Counsel testified that he told the defendant he had a right to appeal, indicating he did not think an appeal would be successful or worthwhile, to which the defendant replied "fine." Under those circumstances, the Eleventh Circuit found both that the defendant had reasonably demonstrated an interest in appealing, and that any rational defendant in his position would have wanted to appeal – satisfying both alternate prongs of the *Flores-Ortega* test.

Further, because counsel in *Thompson* did not explain the appellate process, the advantages or disadvantages of taking an appeal, the fact that he was obligated to file an appeal if that is what the defendant wanted, regardless of his recommendation, the court found that the failure to consult amounted to ineffective assistance of counsel:

> Simply asserting the view that an appeal would not be successful does not constitute "consultation" in any meaningful sense. No information was provided to Thompson from which he could have intelligently and knowingly either asserted or waived his

right to an appeal. This record is clear that no reasonable effort was made to discover Thomas's informed wishes regarding an appeal. Under these circumstances, any waiver by Thompson of this right to appeal was not knowing and voluntary.

*Thompson* at 1207.

Unlike the defendant in *Thompson*, however, in this case there is no evidence that Eason ever *expressed* his dissatisfaction, surprise or unhappiness with his sentence to defense counsel, or that he otherwise generally *expressed* any interest in his appellate rights after sentencing. Thus, there is no evidentiary predicate to support a finding that "this particular defendant reasonably demonstrated to counsel that he was interested in appeal," eliminating the first prong of the *Flores Ortega* test defining a constitutional duty to consult.

On the alternate prong of *Flores-Ortega*, the court examines whether counsel had reason to think that a "rational defendant" would have wanted to appeal under the circumstances of the case (i.e. because there were non frivolous grounds for appeal). In this case, Magistrate Judge White found that a "reasonable defendant would have desired pursing an appeal" in light of the "the confusion regarding the movant's guidelines range as adduced during the sentencing proceedings," and the surprise experienced by defendant and his family at the substantially higher range established at that juncture of the proceedings.

This conclusion is erroneous because whether a "rational defendant" would have wished to pursue an appeal necessarily requires an assessment of whether a non-frivolous ground for appeal existed. This court concludes that no rational defendant in Eason's position would have wanted to appeal because he had no non-frivolous grounds for appeal. Eason had pled guilty, and there was no suggestion that his plea was invalid. Significantly, his plea included an appeal waiver, which permitted of exception only if the court imposed an illegal sentence ( i.e. one in excess of the

11

maximum sentence authorized by law), if the court departed upward from the guideline range established at sentencing, or if the government appealed the sentence. Eason's sentence, which was below the guideline range established at sentencing, was not an illegal sentence, and no other exception to the appeal waiver applied. Hence, he had no non-frivolous basis on which to seek an appeal. *See e.g. United States v Triana*, 2010 WL 1254603 (11th Cir. April 2, 2010)(dismissing appeal based on drug quantity determination where defendant entered plea which contained waiver of appeal rights and no exceptions to the waiver were applicable).

That Eason or his family might have been predictably or reasonably upset, disappointed or surprised to find at time of sentencing that the actual guideline range was substantially higher than that earlier assumed by the prosecutor and defense counsel (as derived from the original PSI report and first addendum) may explain a rational basis for his desire to appeal, but it does not overcome the fundamental legal impediment to an appeal created by the appeal waiver which formed part of his plea agreement. [1]

Under these circumstances, where Eason did not reasonably demonstrate to counsel that he

---

[1] Eason's plea agreement recites that he expressly "acknowledges and understands that the court will compute an advisory sentence under the sentencing guidelines and that the applicable guidelines will be determined by the court relying in part on the results of a pre-sentence investigation by the court's probation office, which investigation will commence after the guilty plea has been entered." The defendant further acknowledged that "under certain circumstances, the court may depart from the advisory sentencing guidelines range that it has computed, and may raise or lower that advisory sentence under the sentencing guidelines." Further, defendant recites he is "aware and understands that the court is required to consider the advisory guidelines range determined under the sentencing guidelines, but is not bound to impose that sentence; the court is permitted to tailor the ultimate sentence in light of other statutory concerns and the sentence may be the more severe or less severe than the sentencing guidelines advisory sentence." Defendant further expressly acknowledged that "court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the [subject] offense .. and that the defendant may not withdraw the plea solely as a result of the sentence imposed."

was interested in appealing, and the record is clear that no rational defendant would want to appeal in these circumstances, pursuant to the standard set out in *Flores-Ortega* and *Thompson*, counsel in this case did not have an affirmative duty to consult further with Eason about an appeal. *See Devine v United States*, 520 F.3d 1286 (11th Cir. 2008)(counsel did not have affirmative duty to consult with defendant about pursuing appeal from sentence at bottom of sentencing guidelines range, where defendant waived right to appeal as part of his plea agreement). [2]

Accordingly, as there is no factual basis to support either aspect of the ineffective assistance determination of the Magistrate Judge, the petitioner's motion to vacate shall be denied as to Claim One.

### Claim Two

In his second claim, movant contends that he is "actually innocent" of the career offender enhancement under the advisory sentencing guidelines, and that he is entitled to a vacatur of his sentence under § 2255 to correct a non-constitutional error of law that "inherently results in a complete miscarriage of justice," citing *Davis v United States*, 417 U.S. 333, 346-47 (1974).

Assuming, without deciding, that *Begay* is retroactively applicable to cases on collateral review (as conceded by the government and determined by the Magistrate Judge), [3] the court concludes, as urged by the government, that a non-constitutional error in the application of the

---

[2] This case, like *Devine*, is distinguishable from *Thompson* because the defendant in Thompson had expressed dissatisfaction over his sentence to counsel, and had questioned counsel over the import of the judge's instruction regarding his right to appeal despite his entry of a guilty plea. Further, there was no appeal waiver involved in *Thompson*.

[3] As such, the movant's §2255 motion, filed within one year of issuance of *Begay*, was timely pursuant to 2255 (f)(3).

13

sentencing guidelines which results in imposition of a sentence within the statutory maximum is not cognizable on a § 2255 motion as one which implicates a "fundamental defect" that "inherently resulted in a complete miscarriage of justice" under the circumstances of this case,  where the sentence ultimately imposed fell substantially  below the bottom of the advisory guideline range calculated at time of sentencing  (albeit erroneously) .  *See Burke v United States,* 152 F.3d 1329, 1331-32 (11th Cir. 1998), *cert. den*., 526 U.S. 1145 (1999); *United States v Coley,* 336 Fed. Appx. 935-36 (11th Cir. 2009)(unpub)(defendant's challenge to his status as a career offender under *Begay* is non-constitutional issue which could have been  raised on direct appeal and is not cognizable on collateral  review  under §2555 );  *Grant v United States*, 72 F.3d 503 (6th Cir. 1996)(non-constitutional errors, such as mistakes  in application of sentencing guidelines, will rarely if ever warrant relief from consequences on collateral review).

In this case, Eason did not raise this issue on direct appeal.  Although *Begay* and *Archer* had not been decided when he was sentenced in 2007, if he believed his career offender status was improper under the guidelines that claim could have been made on direct appeal.  Because his status as a career offender is a non-constitutional issue, it is not cognizable on collateral review under §2255.

It is accordingly **ORDERED AND ADJUDGED**:

1. Following review of the evidentiary record, including transcript of evidentiary proceedings before Magistrate White upon the movant's § 2255 petition, together with the parties' multiple briefs in support of and in opposition to the government's objections to the Magistrate Judge's report, the court respectfully rejects the report and recommendation of Magistrate Judge White upon the movant's motion to vacate, set aside or correct sentence under  § 2255.

14

2. The movant's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [DE# 1] is **DENIED.**

3. All pending motions not otherwise ruled upon are **DENIED**, as moot.

4. This case is **CLOSED.**

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this 21st day of April, 2010.

Daniel T. K. Hurley
United States District Judge

copies to:
Magistrate Judge Patrick White
All counsel

15